IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| VIRGINIA I. CRAWFORD, | |
| Plaintiff, | |
| v. | Civil Action Number 3:04CV580-JRS |
| UNITED SEATING & MOBILITY, INC., | |
| Defendant. | |

**MEMORANDUM OPINION**

THIS IS A personal injury action removed by the Defendant United Seating & Mobility, LLC ("United Seating") from the Circuit Court of Chesterfield County, Virginia. Plaintiff Virginia Crawford ("Crawford") sued United Seating, a wheelchair provider, after her wheelchair tipped over backwards as she rode it up a handicap ramp into her home.[1] Crawford struck her head on the concrete sidewalk when she fell. Crawford claims that United Seating negligently failed to install anti-tip bars on the back of the wheelchair and that this negligence directly caused her injuries.[2]

This matter comes before the Court on United Seating's Motion to Exclude the Testimony of Dr. Gregory O'Shanick ("Dr. O'Shanick"). Crawford identified Dr. O'Shanick as both an expert

---

[1] Crawford's Motion for Judgment also named American Homepatient, Inc. as a defendant. On October 12, 2004, Crawford moved to voluntarily dismiss her complaint against American Homepatient, with prejudice.

[2] In her initial Rule 26(a) disclosures, Crawford claimed the following injuries: "concussion, headaches, post-concussional syndrome, mild traumatic brain injury, altered mental status, visual disturbances, dizziness, right sided otalgia, slurred speech, nausea/vomiting, confusion, forgetfulness, tinnitus, decreased hearing in both ears, balance problems, depression, fragmented sleep, lower jaw tenderness during movement."

witness and a treating physician in her initial disclosures pursuant to Rule 26(2)(b).[3] In her disclosure of expert testimony, Crawford stated that

> [t]hese expert witnesses will further testify that in their opinion, within a reasonable degree of medical certainty, the injuries for which Plaintiff [ ] treated were caused by the July 31, 2002 incident; that the treatment, including any diagnostic testing and therapy ordered, was reasonable and necessary and was causally related to the incident; and that the charges for the treatment and those for the diagnostic testing ordered and/or therapy were reasonable, customary and necessary, and causally related to the incident. . . . They are expected to render opinions consistent with the opinions stated in the medical records produced for each provider.

Crawford then proceeded to identify six expert witnesses she expects to testify at trial. For each expert, Crawford purported to summarize, in a single paragraph, the substance of that witness' testimony.

As to Dr. O'Shanick, Crawford indicated that he would

> testify consistent with his deposition testimony of March 10, 2005 and continued April 15, 2005. He will further testify to a reasonable degree of medical probability that Ms. Crawford had a complicated past medical history that made her more susceptible to a traumatic insult to the brain than most. After review of the medical records of other providers, depositions, objective testing, occupational and neurolinguistic evaluations, and her history, Dr. O'Shanick will testify . . . that the July 31, 2002 wheelchair fall caused a concussion and mild traumatic brain injury resulting in post concussion syndrome with corresponding balance, cognitive hearing and memory deficits.

Plaintiff's Disclosure of Expert Testimony, Item No. 5.

---

[3]Crawford refers to Rule 26(2)(b) in her Disclosure of Expert Testimony filed on March 22, 2005. Presumably, Crawford intended to refer to Rule 26(a)(2)(B) regarding the disclosure of expert testimony. The Court will assume that Crawford's reference is to subsection (a)(2)(B) and that she did not simply transpose her subsection reference because Rule 26(b)(2) addresses the limitations placed on the number of depositions and interrogatories as well as the length of depositions and such subsection is inapplicable to the substance of Crawford's filing.

United Seating moves to exclude Dr. O'Shanick's testimony because (1) Dr. O'Shanick is a specially retained expert witness who failed to comply with the mandatory disclosure requirements of Rule 26(a)(2)(B); and (2) his testimony does not satisfy the requirements of <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993). Additionally, United Seating urges the Court to exclude Dr. O'Shanick from testifying as a treating physician because, as a potential expert witness, he reviewed deposition transcripts and the medical records of other physicians which have informed his knowledge of Ms. Crawford beyond what he would gain as her treating physician.

<u>A. Applicable Federal Rules</u>

Rule 26(a)(2) requires parties to disclose the identity of any person expected to provide expert testimony in accordance with Federal Rules of Evidence 702, 703 and 705. Specifically, the disclosure shall "be accompanied by a written report prepared and signed by the witness." Fed. R. Civil. P. 26(a)(2)(B). The report is required to contain "a complete statement of all opinions to be expressed and the basis and reasons therefor; the data considered by the witness in forming the opinions; . . . the qualifications of the witness, including . . . a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years." Fed. R. Civil P. 26(a)(2)(B). The purpose of these disclosures is to give the opposing party "a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Fed. R. Civil P. 26, Advisory Committee Notes (1993). Moreover, the Committee noted that Rule 37(c)(1) "provides an incentive for full disclosure; namely, that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed." Fed. R. Civil P. 26, Advisory Committee Notes (1993).

Under Rule 702 of the Rules of Evidence, if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." However, the written report requirement "applies only to those experts who are retained or specially employed to provide such testimony in the case." Fed. R. Civil P. 26, Advisory Committee Notes (1993). Treating physicians are exempted from this reporting requirement. United Seating moves this Court to prevent Dr. O'Shanick from testifying as an expert. In response, Crawford states that "Dr. O'Shanick has certainly not been retained or employed to give an opinion based on anything other than what he learned during his treatment of the Plaintiff."

B. Expert vs. Treating Physicians

Indeed, the basis of Crawford's argument against United Seating's motion is that Dr. O'Shanick is not required to comply with Rule 26(a)(2) because he will not offer expert opinion "to assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. As discussed below, if Dr. O'Shanick is considered a retained expert, his testimony should be excluded under Fed. R. Civil P. 37(c)(1) because, in part, Dr. O'Shanick failed to submit the required written report within the time required for making such a disclosure. The decision whether to exclude evidence for non-disclosure under Rule 37 is guided by five factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003).

However, before the Court addresses the five factors, it must first determine whether Dr. O'Shanick is a specially retained expert.

United Seating argues that Dr. O'Shanick is not a treating physician because the basis of his opinions and their time of formation as well as his relationship with Crawford's attorney indicate that he is a specially retained expert. United Seating alleges, and Dr. O'Shanick concedes, that he received deposition transcripts and medical records from plaintiff's counsel for review. According to United Seating, Dr. O'Shanick's testimony as a treating physician would be colored by what he learned from the external sources and should be excluded altogether.

Crawford's injury occurred on July 31, 2002. Crawford claims that she suffered a mild traumatic brain injury as a result of the fall. According to United Seating, Dr. O'Shanick first examined Crawford on December 4, 2002 and that she appeared for three additional sessions between December 2002 and June 24, 2003. United Seating alleges that plaintiff's counsel referred her to Dr. O'Shanick for treatment; Crawford disputes this claim. She claims that Dr. O'Shanick's records indicate that her primary treating physician, Dr. Desmond Moore, referred her for treatment.

Certainly, the source of a plaintiff's referral is not dispositive of whether the doctor is a specially retained expert.[4] However, it is an indicator. See Hall v. Sykes, 164 F.R.D. 46 (E.D. Va. 1995). For purposes of the instant motion, the Court finds compelling the fact that Dr. O'Shanick testified that at the time he examined Crawford, he did not form an opinion as to the cause of her

---

[4] There is some conflict as to whether plaintiff's counsel referred her to Dr. O'Shanick for treatment. When Crawford appeared at Dr. O'Shanick's office, she apparently filled out a form identifying her attorney as the source of her referral. However, the cover sheet on Crawford's file, presumably prepared by someone in Dr. O'Shanick's office, lists the referral source as Dr. Des Moore.

5

symptoms or conditions. Apparently, in the events that followed his examination, Dr. O'Shanick determined that the wheelchair fall caused Crawford's concussion and mild traumatic brain injury.

The distinction between an expert opinion and the testimony of a treating physician is not always readily apparent, especially when a court classifies the witness as a hybrid. See Sullivan v. Glock, Inc., 175 F.R.D. 497, 500 (D. Md. 1997) (describing the treating physician as the quintessential example of a hybrid witness for whom no Rule 26(a)(2)(B) disclosures are required; but that a witness "can be a hybrid witness as to certain opinions, but a retained expert as to others, and with regard to treating physicians, there is a debate over where the line should be drawn"). It does not appear that courts within the Eastern District have gone so far as to label as hybrid witnesses those treating physicians who are also listed as experts.[5]

In Hall v. Sykes, Magistrate Judge Miller heard plaintiff's motion to exempt certain physicians from the expert written report requirement. Defendant opposed the motion, arguing that if the treating physician is paid to come to court to testify, he is a specially retained witness who must submit a written report. In addition, defendant argued that if the treating physician is not required to submit a report, his or her testimony should be limited "to opinions held during the course of the treatment." Sykes, 164 F.R.D. at 47. Finally, defendant argued that a treating

---

[5]In Sullivan, Magistrate Judge Grimm concluded that a treating physician also designated as an expert, was exempt from the written report requirement of Rule 26(a)(2)(B). Judge Grimm added that the treating physician could offer an opinion as to the cause of any medical condition presented in a patient, the diagnosis, the prognosis and the extent of disability, if any, caused by the condition or injury. Additionally, "[t]o the extent that the source of the facts which form the basis for a treating physician's opinions derive from information learned during the actual treatment of the patient – *as opposed to being subsequently supplied by an attorney involved in litigating a case involving the condition or injury* – then no Rule 26(a)(2)(B) statement should be required." Sullivan, 175 F.R.D. at 501.

physician should not be allowed to testify as to causation or prognosis without submitting an expert written report.

Judge Miller succinctly addressed when an expert report is required. Simply paying a fee to a treating physician to attend a deposition or testify in court[6] does not make that treating physician a specially retained expert. Sykes, 164 F.R.D. at 48. "As long as the compensation is merely for the time a treating physician spends in depositions or in trial, then the treating physician is not converted into a specially retained expert." Id.; see also Haga v. L.A.P. Care Servs., 2002 U.S. Dist. LEXIS 13848, 4-5 (W.D. Va. 2002) (discussing determination of retained and specially employed experts from a financial standpoint; a expert who receives only a statutory witness fee and mileage is not required to submit a report, however, an expert who received other types of payment is retained and specially employed and must submit a report). Judge Miller concluded that if a treating physician "forms an opinion of the causation of an injury to a patient during the treatment then such opinion may be expressed by the treating physician" without complying with the report requirement of Rule 26(a)(2)(B). Sykes, 164 F.R.D. at 48. The opposing party is still free to discover the doctor's opinions through the traditional discovery methods.

Continuing, Judge Miller stated that

---

[6]United Seating mentioned in its motion to exclude that Dr. O'Shanick intends to bill plaintiff $750 per hour for reviewing the depositions in this case and $750 per hour for any other litigation services he renders. In addition, Crawford signed a form entitled "Patient Assignment and Lien Form" prior to receiving treatment from Dr. O'Shanick. This form is prepared by Dr. O'Shanick's Center for Neurorehabilitation Services, P.C., and expresses the patient's intention to pursue a claim for personal injuries against the person responsible for causing her injuries. To that end, plaintiff assigned "so much of my award or settlement in my personal injury case" in order pay for Dr. O'Shanick's services. The form gives the sense that Crawford will not be charged for Dr. O'Shanick's services unless she recovers from United Seating. However, according to his deposition, Dr. O'Shanick expects payment regardless of Crawford's eventual recovery.

> if a physician, even though he may be a treating physician, is specially retained or employed to render a medical opinion based on factors that were not learned in the course of the treatment of the patient, then such a doctor would be required to present an expert written report.

Id. During oral argument, Judge Miller learned that plaintiff's counsel referred plaintiff to a chiropractor for treatment. Counsel provided plaintiff with a list of doctors and plaintiff went to one of the listed chiropractors. Judge Miller concluded that "[s]uch a reference by an attorney to a physician for treatment raises the appearance that the physician was specially retained to provide expert opinion." Id. at 49. Therefore, Judge Miller required plaintiff to submit a written expert opinion for the particular doctor. Judge Miller found that "when an attorney selects the physician for treatment as well as testimony it is presumed that the physician was selected for expert testimony." Id. Such a referral indicates that the physician was specially retained for treatment and ultimately for his expert testimony.[7]

In advance of his deposition, Dr. O'Shanick reviewed his records for Crawford, as well as her billing records and additional records provided by plaintiff's counsel. Plaintiff's counsel supplied Dr. O'Shanick with depositions from Crawford, her daughter, her son, neighbors and others. Additionally, there is a reference in Dr. O'Shanick's deposition to the fact that he may have received and reviewed selected medical records from plaintiff's counsel prior to her appearance in Dr. O'Shanick's office on January 8, 2003 for treatment. This leaves open the possibility that plaintiff's counsel referred Crawford to Dr. O'Shanick for both evaluation but also for his expert

---

[7]The Court adopted Judge Miller's reasoning in Litman v. George Mason University, 5 F. Supp. 2d 366 (E.D. Va. 1998). In the opinion, Judge Cacheris noted that plaintiff represented to the Court that the treating physicians who would testify would confine their testimony to factors learned in the course of their treatment. However, if the testimony went beyond, and expert reports had not been filed, then "it would be proper to exclude this portion of the testimony at that time in trial." Id. at 378.

opinion, in which case, according to Sykes, Dr. O'Shanick would be required to submit a written report as a specially retained expert.

However, the factor that tips the scale in favor of requiring a Rule 26(a)(2)(B) report is Dr. O'Shanick's candid deposition testimony in which he states, in sum, that he did not form an opinion as to the cause of Crawford's condition at the time of her appearance in his office over four months after her fall. Crawford last appeared in Dr. O'Shanick's office on June 24, 2003. In his March 10, 2004 deposition, Dr. O'Shanick testified as follows:

> Q: So as of June 24, '03, you still believe she had [a mild traumatic brain injury/post-concussion syndrome]?
>
> A: Yes, sir.
>
> Q: What is the relation of this patient . . . between the MTBI and the PCS?
>
> A: You cannot have a post-concussive syndrome unless you have first had a concussion or a traumatic brain injury of some sort. So post-concussion syndrome is the complicating consequence of her mild traumatic brain injury.
>
> Q: Can you have an MTBI without a PCS?
>
> A: Absolutely.
>
> Q: But you cannot have PCS without an MTBI?
>
> A: Also correct.
>
> Q: You have down here, Number 3, left ear pain on this June 24th, '03, note. Did you ever determine the cause of the left ear pain?
>
> A: No, sir, I did not.
>
> Q: How about the cause of the cognitive complaints listed on Number 4?

A: The cause of the cognitive complaints in part stemmed from the injury she sustained, but, again, given the complexity of her history, there quite likely are other complicating factors, as well.

Q: Such as?

A: You can see cognitive complaints with certain types of psychiatric disorders. You can see disturbances in terms of certain medications, things of that nature. So it was included to assist in my understanding that her picture was more complicated than just the mild traumatic brain injury she was experiencing.

Q: When you last saw her on June 24 of '03 were you able to figure out or attribute which of her cognitive complaints were a result of the wheelchair fall and which were the result of other things you mentioned?

A: At that point in time it was not something again, that I was particularly concerned about parsonning [sic] out which was which.

Q: So you didn't make a determination at that time which came from which?

A: Evidently not.

Q: In number two there, what is that?

A: It says balance disorder/post-trauma vision syndrome.

Q: At the time you were treating her up to June 24 of '03, did you make any determination as to what had caused those problems or those symptoms?

A: Certainly there was a history that she had had orthopedic issues and things of that nature in terms of balance. Certainly, the post-trauma vision syndrome is what it says. It is post traumatic. It happened after the brain injury she sustained. So there was a combination of issues for her.

Dr. O'Shanick Deposition Transcript, pp. 87-89. At the time of his treatment, Dr. O'Shanick did not form an opinion that Crawford's fall caused her reported conditions and symptoms to a reasonable degree of medical certainty. Since the time of treatment, Dr. O'Shanick's opinion has changed and, according to the expert disclosure, he is now prepared to testify that Crawford's fall caused her symptoms. Regardless of whether this opinion is reliable, it is the opinion of a specially retained expert not formed at the time of treatment..

Assuming for the moment that Crawford's attorney referred her to Dr. O'Shanick, according to Sykes, such a referral creates the presumption that he was hired to give expert testimony. Crawford has not made any real effort to rebut this presumption. Everything about Dr. O'Shanick's involvement in this case gives the impression that he is a specially retained witness consulted in anticipation of litigation whose function is to discuss mild traumatic brain injuries, the fact that the injury can manifest itself without any apparent or visible damage to the brain and that Crawford appears to suffer from such an injury as a result of her fall. However, Dr. O'Shanick did not express this opinion at the time that he examined Crawford; this and the other factors surrounding his involvement make Dr. O'Shanick a specially retained expert who must comply with the disclosure requirements of Rule 26(a)(2).

The question then becomes what to do with Dr. O'Shanick's failure or inability to comply with the written report requirement. Pursuant to Sykes and the five-factor test employed in Southern States Rack & Fixture, Inc., the proper remedy is to exclude Dr. O'Shanick from testifying at trial. Crawford is attempting to do indirectly what she cannot due directly by labeling Dr. O'Shanick as a treating physician. Crawford cannot overcome the surprise to United Seating that will result from allowing Dr. O'Shanick to testify as an expert without submitting a written report as to his findings.

Indeed, Dr. O'Shanick admitted that he cannot provide the necessary list of other cases in which he testified as an expert within the preceding four years. Such background evidence is important to any cross-examination by United Seating. Certainly, Dr. O'Shanick's evidence is important to Crawford's case but the fact that Dr. O'Shanick cannot provide the necessary report and the obvious, additional delay of the trial which would ensue if the Court allowed Crawford to retain an expert who could satisfy the reporting requirement would not be in the interests of either party.

Accordingly, United Seating's Motion to Exclude will be granted and Dr. O'Shanick will not be allowed to testify at trial. Given this finding, the Court declines to address United Seating's remaining challenges to Dr. O'Shanick's testimony.

An appropriate Order shall issue.


ENTERED this 7th day of JUNE, 2005

                                      /s/ James R. Spencer
                                      UNITED STATES DISTRICT JUDGE